IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EDGAR S. VITEK, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Case No. 06-cv-615 |
| : | |
| AIG LIFE BROKERAGE, : | JUDGE ALGENON L. MARBLEY |
| AMERICAN GENERAL LIFE INSURANCE : | |
| COMPANY, AMERICAN INTERNATIONAL : | Magistrate Judge Mark Abel |
| GROUP, INC, and THE OLD LINE LIFE : | |
| INSURANCE COMPANY OF AMERICA., : | |
| : | |
| : | |
| Defendants. : | |

**OPINION & ORDER**

**I.  INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment.  Plaintiff, Edgar Vitek ("Vitek" or "Plaintiff"), brought an action against Defendants AIG Life Brokerage, American General Life Insurance Company, American International Group, Inc., and The Old Line Insurance Company of America ("Old Line") (collectively "Defendants") for breach of contract (Count I), tortious interference with a business relationship (Count II), and tortious interference with contract (Count III)  seeking compensatory and punitive damages.

Specifically, Vitek alleges that Defendants breached the General Agent's Agreement between the parties, which authorized Vitek to sell insurance policies for the Defendants. Allegedly, Defendants breached the contract by: (1) unilaterally releasing an insurance agent under Vitek's supervision; and (2) failing to pay compensation owed to Vitek under that contract.  Further, Vitek contends that those breaches constituted, respectively, tortious interference with a business relationship and tortious interference with contract.  For the reasons

set forth below, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment.

## II.  BACKGROUND

### A.  The Parties

Plaintiff, Edgar Vitek, is an independent insurance agent who sold insurance policies for the Defendants from 1973-1996.  Under Defendant Old Line's business model, each individual insurance agent or "representative" submits business through a "general agent" to whom he or she reports.  Vitek became affiliated with Old Line in 1973, when he began selling the company's insurance policies in California under the "general agency" of R. A. Sims.

Later that year, Vitek, became a resident of Columbus, Ohio, and decided to become a general agent himself.  On April 1, 1973, Plaintiff entered into a General Agent's Agreement with Old Line. Old Line was a subsidiary of USLIFE which merged into Defendant American General Life Insurance Company in 1997.  American General Life Insurance Company is, in turn, a wholly owned subsidiary of American International Group, Inc.  AIG Life Brokerage is a division of American International Group, Inc. Vitek contends that, as a result of the series of acquisitions and consolidations since 1973, all of the Defendants are parties to his General Agent's Agreement.

### B.  Vitek's General Agent's Agreement

Under the terms of Vitek's General Agent's Agreement with Old Line, Vitek is permitted to recommend individuals to the company to serve as "representatives" to sell policies under his jurisdiction.   He is also entitled to receive commissions, special fees, bonuses, and "persistency fees" (renewal commissions) on policies if "[Vitek's] name or the name of a REPRESENTATIVE under his jurisdiction [appears] as soliciting agent on the application for

insurance and the insurance [was] fairly effected through the efforts" of Vitek or his representative. (General Agent's Agreement Section Three (E)). The exact amount of commissions, special fees, and bonuses is determined by schedules appended to the Agreement and periodically updated.

Of particular importance to this dispute, Section Six (G) of the General Agent's Agreement provides, that:

> The COMPANY shall have the right to terminate the Agreement of any REPRESENTATIVE recommended by or under the jurisdiction of the GENERAL AGENT and such termination shall be without liability to the COMPANY, either to the GENERAL AGENT or otherwise.

Finally, Section Six (I) states "It is expressly understood and agreed that this Agreement contains all promises, inducements and representations made collateral thereto."

### C. The Parties' Relationship With Cotterman and Peace

In 1986, Vitek developed a relationship with insurance agents Craig Cotterman ("Cotterman") and Allan Peace ("Peace"). Vitek recommended that Old Line sign Cotterman as an insurance broker under Vitek's supervision and sign Peace as an Associate General Agent. Old Line agreed and signed Cotterman as a broker under Vitek's General Agency, entitling Vitek to a share of commissions generated by Cotterman's policies. Cotterman's Brokerage Agreement specifically states: "The COMPANY and the BROKER shall have the right at any time to terminate this Agreement."

On July 15, 1986, Old Line also signed Peace as an Associate General Agent. The arrangement entitled Peace to a share of Cotterman's commissions. Section Four (c) of Peace's Associate General Agent Agreement states that "[t]his Agreement may also be terminated with or without cause by the ASSOCIATE GENERAL AGENT or by the Company."

In October of 1986, Old Line notified Vitek that they were terminating both Cotterman's Brokerage Agreement with Vitek's General Agency and Peace's Associate General Agent Agreement. Furthermore, Old Line informed Vitek that it was giving Peace his own General Agency and assigning Cotterman as a representative under Peace's agency. Since that time, Vitek has not received any commissions from policies written and sold by Cotterman.

### D. The Brady Agency

In 1990, Defendant Old Line assigned Vitek's General Agency to a "home office agency" called the Brady Agency. According to Defendants, it was Old Line's company practice that all general agencies within the company were administratively assigned to home office agencies, such as the Brady Agency. Defendants claim that the home office agencies were used as a management tool that permitted regional vice presidents to monitor a general agency's production and support needs and to allow under-producing agencies to continue servicing policyholders.

The Brady Agency was under the supervision of then Regional Vice President Pat Lemont. From 1990 onward, the terms "Home Office Agency" and "Brady Agency" and Pat Lemont's name began to appear on documents that Plaintiff received from Old Line. Vitek claims that following his assignment to the Brady Agency, he stopped receiving regular reports from the company regarding which of his General Agency's policies remained in force and which had lapsed.

### E. Procedural Posture

On July 20, 2006, Vitek filed this case in the Franklin County Common Pleas Court, alleging breach of contract (Count I), tortious interference with a business relationship (Count II), and tortious interference with a contract (Count III). Defendants removed the case to this

Court based on diversity jurisdiction. Now, Defendants move for summary judgement on all of Vitek's claims.

### III.  STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [and] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). But the non-moving party "may not rely merely on allegations or denials." Fed. R. Civ. P.56(e)(2); see *Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

### IV.  LAW AND ANALYSIS

Defendants advance three basic arguments in support of their Motion for Summary Judgement. First, they argue that both of Vitek's breach of contract claims are infirm because he (1) has not demonstrated breach of any contractual provisions and (2) he has not adduced evidence establishing damages to a reasonable degree of certainty. Second, Defendants contend that Vitek has failed to produce any evidence of improper action by Defendants or resulting

-5-

damages as required to support his tortious interference claims. Third, Defendants claim that all of Vitek's claims are time-barred under the applicable statutes of limitations.

### A.  Breach of Contract

To establish a breach of contract claim under Ohio law a plaintiff must show that: (1) a contract existed; (2) the plaintiff performed; (3) the defendant breached; and (4) the plaintiff suffered damages.  *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (interpreting Ohio law); *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 807 N.E.2d 953, 957 (Ohio Ct. App. 2004).  Vitek has asserted two breach of contact claims.  First, he claims that Defendants violated the General Agent's Agreement by terminating Cotterman from his General Agency and reassigning Cotterman to Peace's General Agency without obtaining Vitek's release.  Second, he claims that Defendants violated the Agreement by withholding renewal commissions, special fees and bonuses owed to him following his assignment to the Brady Agency.  Defendants contend that summary judgment is warranted on both of Vitek's contract claims because he has failed to show that Defendants actions breached any terms of the parties' contract and because Plaintiff has not produced sufficient evidence of damages.

### 1.  The Cotterman Termination Claim

Defendants argue that their unilateral termination of Cotterman from Vitek's General Agency was expressly authorized by the terms of the General Agent's Agreement and therefore, could not constitute a breach of contract.  Section Six (G) of the General Agent's Agreement states:

> The COMPANY shall have the right to terminate the Agreement of any REPRESENTATIVE recommended by or under the jurisdiction of the GENERAL AGENT and such termination shall be without liability to the COMPANY, either to the GENERAL AGENT or otherwise.

Vitek concedes that nothing in this provision prevented defendants from terminating Cotterman from his General Agency without obtaining a release. He argues, however, that this provision only applied to situations where an agent was completely disassociated with the company rather than re-assigned from one general agent to another. Further, he seeks to introduce parol evidence of a pre-contractual "course of dealing or custom" between the parties to demonstrate that the General Agent's Agreement included an "unstated term" that required Defendants to obtain a release before assigning Cotterman to Peace's General Agency.[1] The Court rejects Vitek's argument.

When the terms of a contract are unambiguous, contract interpretation is a matter of law. *Pavlovich*, 435 F.3d at 565. As a matter of interpretation, "[c]ourts have an obligation to give plain language its ordinary meaning and to refrain from revising the parties' contract." *Wauseon*, 807 N.E.2d at 958. Moreover, under Ohio's parol evidence rule, "the parties' final written integration of their agreement may not be varied, *contradicted* or supplemented by evidence of *prior* or contemporaneous oral agreements." *Galmish v. Cicchini*, 734 N.E.2d 782, 788 (Ohio 2000) (emphasis added).

---

[1] Vitek claims that Old Line's company policy required a representative to obtain a release from his or her general agent before moving to another general agency and that the policy became an unstated term of his General Agent's Agreement based on a course of dealing between the parties. His course of dealing evidence consists of a single alleged pre-contractual interaction between himself and a former Old Line Regional Vice President, Robert Bergstrom. According to Vitek, in 1973 Bergstrom informed him that company policy required Vitek to obtain a release from Sims general agency, to which he was appointed as a representative, before Vitek could open his own general agency. Vitek requested and received a release from Sims. Vitek also seeks to introduce the Release itself, which states only "[t]his will confirm the release of Edgar Vitek as an agent appointed under my [R.A. Sims'] agency. The release in no way references any internal company policy and is dated' several months before Vitek's General Agent's Agreement was executed.

Vitek's General Agent's Agreement was a fully integrated contract.  *Bellman v. Am. Int'l Group*, 865 N.E.2d 853, 857 (Ohio 2007) ("A contract that appears to be a complete and unambiguous statement of the parties' contractual intent is presumed to be an integrated writing.").  The Court will not consider Vitek's parol evidence to contradict the terms of the Agreement by imposing a release requirement.  The contract term regarding termination of representatives under Vitek's General Agency is unambiguous.  The ordinary meaning of the termination provision gave Defendants the unrestricted right unilaterally to terminate Cotterman from Vitek's General Agency for any reason, including signing him to another general agent, without liability.  Nothing in the terms of the contract required Defendants to obtain Vitek's release. Therefore, Vitek has produced no evidence of a breach of contract based on Defendant's unilateral termination of Cotterman and summary judgment is warranted on that claim.

Moreover, the Court agrees with Defendants' argument that this claim is time-barred.  Under Ohio law, a breach of contract claim must "be brought within fifteen years after the cause thereof accrued."  Ohio Rev. Code Ann. § 2305.06 (2008).  A breach of contract claim accrues at the time the breach occurred.  *O'Striker v. Jim Walter Corp.*, 447 N.E.2d 727, 730 (Ohio 1983); *Bacik v. Indus. Constr.Co.*, No. 1:05 CV 2329, 2006 WL 1735266, at *5 (N.D. Ohio June 23, 2006). Under Vitek's theory, Defendants breached the General Agent's Agreement on October 8, 1986 when they unilaterally terminated Cotterman.[2]  Thus, the termination breach of contract claim became time-barred in October 2001.  Vitek's complaint was filed on June 20, 2006, and is consequently time-barred.  Vitek interposes four arguments in an attempt to save this time-barred claim.  None has merit.

---

[2] Vitek admits that he was aware of the termination on that date.

First, Vitek claims that because his General Agency was paid commission annually, Defendants committed a new breach each year and the statute of limitations on both of his contracts claims began afresh for each breach. While this argument makes sense when applied to Vitek's second breach of contract claim regarding his failure to receive full compensation following his assignment to the Brady Agency, it is innaplicable to the alleged breach based on Cotterman's termination. Under the terms of the General Agent's Agreement, Vitek had a right to a share of commissions from policies written by "a REPRESENTATIVE under his jurisdiction." Once Cotterman was terminated from his agency, Vitek had no contractual right commissions on policies subsequently generated by Cotterman through Peace's General Agency.³ Thus, the breach complained of was Cotterman's allegedly improper termination in 1986. The statute of limitations on that alleged breach expired in 2001.

Second, Vitek claims that the "discovery rule" saves his claim because he was unaware of the amount of his damages until at least 2005. Under the discovery rule "the statute of limitations does not begin to run until a plaintiff discovers, or reasonably should have discovered" his injury. *Sexton v. City of Mason*, 883 N.E.2d 1013, 1021 (Ohio 2008). Vitek has produced no case law, nor is the Court aware of any, suggesting that the discovery rule applies to breach of contract cases under Ohio law. *See Harris v. Liston*, 714 N.E.2d 377, 378 (Ohio 1999) (collecting cases applying the discovery rule, none of which involved breach of contract or tortious interference claims); *Settles v. Overpeck Trucking Co.*, No CA93-05-083, 1993 WL 534700, at *1 (Ohio Ct. App. Dec. 27, 1993) (refusing to apply the discovery rule to a breach of

---

³Vitek might point to the volume of policies generated by Cotterman for Peace's General Agency as an indication of the damages he suffered from the allegedly wrongful termination. But, he had no contractual right to receive those commissions under the terms of his General Agent's Agreement once Cotterman was terminated as his representative.

oral contract claim). Moreover, even if the discovery rule applied it would not save Vitek's claim because he has only argued that he was unaware of the extent of his damages flowing from the alleged breach. *Doe v. First United Methodist Church*, 629 N.E.2d 402, 538-39 (Ohio 1994) (holding accrual of statute of limitations was not delayed merely because plaintiff was unaware of the full extent of his injuries).[4]

Third, Vitek contends that the breach was a "continuing violation" and therefore the statute of limitations does not operate to bar his claim. The Sixth Circuit has noted that "[c]ourts have been extremely reluctant to apply [the continuing violation] doctrine outside of the context of Title VII [claims]." *LRL Props. v. Portage Metro. Hous. Auth.*, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995) (applying Ohio statute of limitations law). Again, Vitek has not cited any cases, nor is the Court aware of any, indicating that Ohio would entertain extending the continuing violation doctrine to breach of contract cases.[5] The Court finds this theory is inapplicable to *any* of Vitek's claims.

Fourth, Vitek proposes that a 2005 letter sent by John Gabriel, AIG Life Brokerage's former Chief Compliance Officer, which stated that Vitek's assignment to the Brady Agency had not affected his compensation, somehow waived Defendants' statute of limitations defense. "A waiver is an intentional relinquishment of a known right." *State v. Blackburn*, 887 N.E.2d 319, 322 (Ohio 2008). He cites no legal authority for this proposition. The Court has reviewed the letter in its entirety and finds nothing in its contents that suggest it constituted an intentional relinquishment of Defendants' statute of limitations defense.

---

[4] This is equally true for Vitek's tortious interference with business relations claim, which is premised on the same factual basis as the Cotterman Termination Claim.

[5] This is equally true for tortious interference claims.

### 2. The Brady Agency Breach Claim

Defendants argue that Vitek's breach of contract claim based on his 1990 assignment to the Brady Agency fails because he has not submitted evidence of breach and damages with enough certainty to sustain the action.  They support their position with documentary evidence and deposition testimony from former Old Line Regional Vice President Pat Lemont stating that the assignment was purely administrative and had no effect on Vitek's compensation.  Vitek contends that he has shown damages, pointing to Defendants alleged failure to pay the total amount of renewal commissions, Special Fees, and Medalist Universal Life Assets Under Management Bonuses ("Bonuses") owed to his general agency since the assignment.  Those facts would establish a breach of the General Agent's Agreement if supported by sufficient evidence.

#### i. Vitek's Tardy Damages Disclosure

Vitek comes forward with a calculation of damages for the first time in his response to Defendants Motion for Summary Judgment.  As a preliminary matter Defendants assert, without citation to legal authority, that Vitek should not be permitted to generate a calculation of damages now that discovery has closed because they would be prejudiced.  The Court is fully aware that Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires Vitek to disclose a "computation of each category of damages" and the nonprivileged materials on which the calculation was based as part of his initial disclosures.   The Court also recognizes that the Sixth Circuit has established that Rule 37(c)(1) "mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified."  *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (internal citations omitted).

Vitek asserts that he requested information on his in-force policies from Defendants repeatedly during discovery. Defendants, however, only disclosed the policy lists upon which Vitek's damage calculations are based on November 28, 2007, after discovery was closed. Further, he explained that his own records did not contain lists of his Agency's in-force policies for the relevant time period (1) because renewal payments were made directly to the insurance company and (2) because he stopped receiving regular reports on his in force policies from the company following his assignment to the Brady Agency. Defendants have not rebutted Vitek's assertions.

The Court finds that Vitek has demonstrated substantial justification for his delayed damages disclosure. The record supports Vitek's claim that he requested information on his active policies during discovery. Without information on which policies remained active in a given year, Vitek could not determine the amount of compensation he was contractually owed. Moreover, the Court finds Vitek's delayed disclosure harmless because the policy lists on which the calculations were based were within Defendants' possession and because Defendants had an opportunity to attack the sufficiency of Vitek's damage calculation in their Summary Judgment Reply Brief.

### ii. Reasonable Certainty of Vitek's Damages

A Plaintiff must establish damages for breach of contract with reasonable certainty. *See*, *e.g.*, *Doner v. Snapp*, 649 N.E.2d 42, 44, 47-8 (Ohio Ct. App. 1994) (affirming summary judgment against plaintiff where plaintiff failed to establish damages to a reasonable degree of certainty); *Ohio Envtl. Dev. Ltd. P'ship v. Envirotest Sys. Corp.*, 478 F.Supp.2d 963, (N.D. Ohio 2007). Evidence of damages must not be speculative. *Cincinnati Fluid Power, Inc. v. Rexnord, Inc.*, 797 F.2d 1386, 1393 (6th Cir. 1986) (applying Ohio law). Instead, "a plaintiff must present

facts from which the loss may be reasonably calculated." *Id*. Generally, Ohio courts have "required greater certainty in the proof of damages for breach of contract than in tort." *Rhodes v. Rhodes Indus., Inc.*, 595 N.E.2d 441, 448 (Ohio Ct. App. 1991).

Vitek claims that Defendants failed to pay him the full amount of renewal commissions, Special Service Fees ("Special Fees"), and bonuses owed to him each year from 1991-2006. In support of his damages claim Vitek presents:

- two lists of insurance policies submitted through his agency that were in force from 1997-2007, including only the policy number, the face value of the policy, and the designation of which policies were "universal life policies;"[6]

- a Schedule of Commissions, Persistency Fees, and Vesting Requirements and Medalist Commissions schedule laying out the percentage of Commissions payable to Vitek;

- a Special Service Fee Agreement, laying out Special Fees payable to Vitek based on the total annual issued and paid life insurance Face volume of his policies;

- a Notice of Change, laying out the structure of the Medalist Universal Life Assets Under Management Bonuses for which Vitek was potentially eligible;

- the affidavit of an undisclosed expert on insurance policies stating that "[a] reasonable conservative estimate of annual premiums paid on an insurance policy is a figure of $4 per thousand dollars of coverage, with a $50 policy fee on each policy;"

- a Summary of Damages created by Vitek based on the above data and the total amount of annual compensation Defendants paid Vitek.

Viewed in the light most favorable to Vitek, this evidence establishes some but not all of Plaintiff's damages categories to a reasonable degree of certainty.

### a. Special Fees and Bonus Damages

---

[6] It appears from the record that only Universal Life policies were eligible for Medalist Universal Life Assets Under Management Bonuses.

The evidence shows that Special Fees and Bonuses were both calculated based on the total face value[7] of all eligible insurance policies, once the general agent maintained a threshold volume of policies in a given year. Plaintiff has presented evidence of the face value of his Agency's active policies from 1997-2007, the formula through which Special Fees and Bonuses were determined, and the total amount of compensation he was paid by year. Given those facts, the Court finds Vitek's alleged losses based on insufficient Special Fee and Bonus payments can be established to a reasonable degree of certainty.

The Court recognizes that Vitek's *calculation* of Special Fees and Bonus damages is confusing and insufficient because he calculates those figures based on the face value of his, Cotterman's, and Peace's policies together, conflating the damages for his two breach of contract claims. *See City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, (N.D. Cal. 2003) (holding Rule 26(a)(1)(c) damage disclosure insufficient where plaintiff aggregated damages from multiple claims). As discussed above, Defendants did not breach the General Agent's Agreement by unilaterally terminating Cotterman and, therefore, Vitek is not entitled to any damages based on policies generated by Cotterman or Peace after Cotterman's 1986 termination from Vitek's General Agency. Nevertheless, Plaintiff has provided evidence of the policies in force from his General Agency, separate from those submitted through Cotterman and Peace, from which his Special Fee and Bonus damages could be calculated. Vitek has demonstrated a genuine issue of material fact regarding the existence and amount of damages from Defendants' alleged withholding of Special Fee and Bonus compensation from 1997-2006. However, Vitek is hereby ordered to supplement his initial disclosure with a damage calculation

---

[7] Or "cash surrender value."

for Special Fees and Bonuses based only on insurance policies submitted through Vitek's General Agency.

### b. Renewal Commission Damages

Next the Court considers Vitek's claim for damages based on insufficient renewal commission payments. The commission schedules produced by Vitek show that renewal commissions were calculated as a percentage of paid *premium* on policies submitted through Vitek's agency. To demonstrate damages from Defendants' alleged withholding of commissions, Vitek would need to produce evidence demonstrating: (1) the policies eligible for renewal commissions; (2) commissions rate for each of those policies; (3) the annual premium for each policy; and (4) the amount of commissions he was actually paid on those policies. At best, the evidence produced by Vitek would require a trier of fact to speculate regarding the amount of renewal commissions due to him under the contract.

Vitek has not produced evidence of the annual premium on a single policy. Vitek states that he calculated damages based in part on "his records for policies . . . from which he was able to find the annual premium." Although that statement suggests that Vitek may possess some records of the premium amounts for some of his policies, he does not attach those records as an exhibit nor does it appear to be in evidence otherwise. Therefore, it cannot be considered by the Court in ruling on summary judgement. Fed. R. Civ. P. 56(c); *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.").

For policies on which he had no premium data, Vitek calculated commission damages using the "reasonable premium amount" proposed by his expert. It would be mere speculation,

however, to assume that the "reasonable premium amount" estimated by his expert was the contractual premium amount. In short, Vitek has not produced any evidence of the actual premiums on which his contractual commissions were to be calculated. Therefore, he cannot demonstrate to a reasonable degree of certainty that the amount of commissions fees paid to him was insufficient and summary judgment is warranted on this claim.

Finally, Vitek admits that he has not produced *any* evidence of any category of damages from the 1991-1996. Consequently, Defendants are entitled to summary judgment on Vitek's claim for damages for those years.

### iii. Application of Ohio's Fifteen Year Statute of Limitations

Defendants argue that recovery on the Brady Agency claim is barred by the statute of limitations because Vitek admits he was aware of the assignment in 1990 and that the assignment might affect his compensation, over fifteen years before Vitek filed suit. Here, however, Vitek has the better argument. Under Ohio law, a contract requiring repeated, periodic payments is viewed as an installment contract, with the statute of limitations running separately on each installment. *Everhart v. State Life Ins. Co.*, 154 F.2d 347, 356 (6th Cir. 1946) (applying Ohio law); *Bacik*, 2006 WL 1735266, at *5-6.

The parties do not dispute that Vitek was entitled to compensation calculated annually for policies submitted through his General Agency under the General Agent's Agreement. Consequently, every year that Vitek was not paid the full amount of yearly commissions due to him constituted a separate breach of the General Agency Agreement, with the statute of limitations running separately on each breach.[8] The Court has already ruled that Vitek may only

---

[8]To avoid the consequences of this accrual rule, Defendants assert that Vitek was only assigned to the Brady Agency once. Thus, they reason, the 1990 assignment is the only breach for statute of limitations purposes, with any compensation subsequently withheld constituting the

-16-

claim Special Fees and Bonus damages from 1997-2006 because he has only produced evidence of damages for those years. Vitek's claim for damages from 1997 onward fall well within Ohio's fifteen year statute of limitations.

### B. Tortious Interference with Business Relations

To establish a claim for tortious interference with a business relationship under Ohio law, a plaintiff must show that the defendant "without a privilege to do so, induce[d] or otherwise purposefully cause[d] a third party not to enter into, or continue, a business relationship with another." *Super Sulky, Inc. V. U.S. Trotting Ass'n*, 173 F.3d 733, 741 (6th Cir. 1999) (applying Ohio law). The Plaintiff has the burden of proving the defendant's "lack of privilege or improper interference." *Id*. at 742. The Ohio statute of limitations for tortious interference claims is four years. Ohio Rev. Code Ann. § 2305.09(D). The statute begins to run when the "events giving rise to the claim occur." *Koury v. City of Canton*, 221 F. App'x 379, 386 (6th Cir. 2007).

Vitek claims that Defendants tortiously interfered with his business relationship with Cotterman and Peace by terminating Cotterman and Peace's relationship to Vitek's General Agency in 1986 without obtaining his release. As the events giving rise to that claim occurred over twenty years before Vitek's 2006 complaint, this claim is time-barred.[9] Moreover, no reasonable juror could find that Defendants' exercise of their unlimited contractual right to terminate Cotterman and Peace constituted improper interference. *Franklin Tractor Sales v. New*

---

damages flowing from that breach. However, Vitek's argues that the yearly failure to pay all compensation due constituted the complained of breach, not that the assignment itself was a breach.

[9] Vitek argues again that the "continuing violations" doctrine or the discovery rule save this claim. However, as discussed in section IV.A.1, Vitek has produced no legal authority indicating that those doctrines are applicable to tortious interference claims. Moreover, the discovery rule would not operate to save the claim given that Vitek was aware of his alleged injury in 1986.

*Holland North America, Inc.*, 106 F. App'x 342, 347 (6th Cir. 2004) (holding defendant's conduct privileged where defendant merely exercised an unlimited contractual right).[10]

### C. Tortious Interference with Contract

Under Ohio law, "one who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract" commits tortious interference with contract. *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995). It is well established under Ohio law that "it is no tort to breach a contract, regardless of motive." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 602 (6th Cir. 1988) (internal citations omitted). Consequently, "a party to a contract cannot be liable in tort for inducing his own breach." *Battista v. Lebanon Trotting Ass'n.*, 538 F.2d 111, 116 (6th Cir. 1976). Moreover, a parent company is privileged to interfere with its subsidiaries' contract because it is in effect the same entity as the subsidiary. *Canderm*, 862 F.2d at 601 (applying Ohio law).

Vitek asserts that Defendants tortiously interfered with his General Agent's Agreement when they breached that contract through non-payment of commissions and bonus compensation. Thus, Vitek's tortious interference with contract claim is based on the same facts as the Brady Agency breach claim described in Section IV.A.2. As Vitek's theory is that Defendants were all parties to his General Agent's Agreement and liable to him for its breach, he cannot hold them liable for tortious interference as well. Moreover, even if Defendants AIG Life Brokerage,

---

[10]This ruling is bolstered by Defendants unrebutted evidence that (1) Peace's Associate General Agent Agreement and Cotterman's Brokerage Agreement gave Cotterman and Peace the right to terminate their agreements as will; (2) Defendants' decision to terminate Cotterman and Peace from their association with Vitek was precipitated by Cotterman and Peace's desire to create an independent relationship with Old Line; and (3) Defendants' decision was motivated by their business desire to prevent the loss of several hundred customers that Peace serviced.

American General Life Insurance Company, and American International Group, Inc. were not parties to the Agreement, their alleged interference would be privileged because the record shows those Defendants were all Defendant Old Line's parent companies or divisions thereof. Consequently, Vitek's tortious interference with contract claim fails as a matter of law.

## V.  CONCLUSION

For the foregoing reasons Defendants Motion for Summary Judgment is **GRANTED** with respect to: (1) Plaintiff's breach of contract claim based on Cotterman's termination from his General Agency; (2) Plaintiff's claim for breach of contract damages based on renewal commissions; (3) Plaintiff's claim for breach of contract damages from 1991-1996; and (4) Plaintiff's tortious interference claims  (Counts II and III).

Summary judgment is **DENIED** on Plaintiff's claim for Special Fee and Bonus Damages from Defendant's alleged withholding of that compensation following his assignment to the Brady Agency from 1997-2006.  Finally, Plaintiff is ordered to produce a revised damages disclosure within fourteen (14) days of this Opinion with a damage calculation for Special Fees and Bonuses based only on insurance policies submitted through Plaintiff's General Agency.

**IT IS SO ORDERED.**

   s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 22, 2008**